## Philadelphia Council of Property Owners v. City of Philadelphia

*Samuel B. Brenner,* for plaintiffs.

*Carl K. Zucker* and *George J. Ivins,* for defendants.

SLOANE, J., September 30, 1969.—This is an action by Philadelphia Council of Property Owners, an unincorporated association of real estate owners, seeking an injunction against the Department of Licenses and Inspections to prohibit the use of a "point score" system in the administration of section 7-506 of the Philadel-

phia Housing Code (1954 Ordinance, P-516). Section 7-506 enables the Department of Licenses and Inspections to declare dwellings unfit for human habitation whenever it finds that a "dwelling constitutes a serious hazard to the health or safety of the occupants or to the public because it is dilapidated, insanitary, vermin-infested, or lacking in the facilities and equipment required by this Title. . . ." Under 35 PS §1700-1, when a building is declared unfit for human habitation, the inhabitants of the building may pay the rent into an escrow account which is to be paid to the landlord only when the dwelling is certified as fit for human habitation. Under section 7-506(3) any person aggrieved by the declaration of unfitness may appeal to the board as provided in section 7-504.

Section 7-504 provides that when the department discovers a violation of the Housing Code, the violator is notified and has 30 days to correct the defect. Any person aggrieved by a decision or action of the board may appeal to the Board of Licenses and Inspections Review. This appeal is to be filed within 10 days of receiving notice of a decision or action by the board and an appeal stays the requirement of compliance with the order.

The complaint in equity alleges that the past practice of the department was to issue a notice of violations (section 7-504) to the owner if an inspection revealed violations which aggregated 80 points or more. The complaint further alleges that the department presently declares dwellings unfit for human habitation (section 7-506) upon inspection and a total point score of 42 to 60 points. Once the building is condemned, the tenants are notified of their rights under 35 PS §1700-1, and the owner is notified of the condemnation.

Plaintiffs contend (1) that the "point score" system is arbitrary, without uniform standards; (2) that the

decisions of the inspectors are arbitrary, unreasonable and confiscatory; (3) that the procedure for declaring dwellings unfit for human habitation denies plaintiffs their right to appeal to the review board, and (4) that the regulation deprives petitioners of property without due process of law.

Plaintiffs seek a declaration that the regulations are unconstitutional, an injunction against the department and its employes "from exercising any power conferred upon them by the City Home Rule Charter", an injunction against the City Solicitor, Commissioner of the Department of Licenses and Inspections.

In response, defendants have filed preliminary objections alleging that plaintiffs have failed to state a claim upon which relief may be granted because (1) they have an adequate remedy at law through the exercise of administrative remedies in every instance in which the department issues a notice of violation; (2) because the plaintiffs have not averred that they have exhausted their administrative remedies. Defendants further allege (3) that the complaint in equity is vague in that it does not refer to specific property and it does not say which portions of the Philadelphia Code the point score system violates. Defendants also raise the issues of (4) governmental immunity and (5) failure to comply with the requirements for bringing a class action. I overrule the objections.

## I. ADEQUATE REMEDY AT LAW.

Defendants argue that plaintiffs have an adequate remedy at law, because in every instance in which the department has or will issue a notice of a violation there is an administrative appeal. This argument ignores the contents of plaintiffs' complaint. The complaint, in part, challenges the validity of the existing procedure within the Department of Licenses and Inspections.

As I read the complaint, it alleges that the owners lose money as soon as a building is declared unfit for human habitation. It is their contention that unlike the section 7-504 procedure, where an appeal stays the effect of the department's order, the section 7-506 procedure causes them to lose rent money while the appeal is pending because of the operation of 35 PS §1700-1. It is this very procedure which is attacked. The question of the "adequacy" of the administrative procedure in protecting plaintiffs' rights is the very subject of this litigation. Therefore, with respect to the claims that the existing procedures deny the right of appeal and that they deprive plaintiffs of property without due process of law, petitioners have no adequate remedy at law. The charges of arbitrariness are charges which attack the system itself and an appeal through the system does not provide an adequate remedy.

## II. EXHAUSTION OF ADMINISTRATIVE REMEDIES.

The exhaustion doctrine is closely related to the concept of an adequate remedy at law, for, if a claimant has other adequate remedies, he should be compelled to exhaust these before turning to the courts. In order for a remedy to be adequate, it must be available more or less immediately and it must substantially protect petitioner's claim of right: Jaffe, The Exhaustion of Administrative Remedies, 12 Buffalo L. Rev. 327, 328 (1963). And, as Judge Magruder has pointed out: "It seems to us that there has been some confusion as to the application to these cases of the doctrine requiring exhaustion of administrative remedies. This doctrine had its origin in a discretionary rule adopted by courts of equity to the effect that a petitioner will be denied equitable relief when he has failed to pursue an available administrative remedy

by which he might obtain the same relief": Smith v. United States, 199 F. 2d 377, 381 (1st Cir., 1952).

Professor Jaffe has remarked on this very situation:

"The exhaustion rule comes into effect only if the remedy—whether administrative or judicial does not matter—is adequate to protect the asserted claim. It is often the situation, for example, when the validity of a regulation is in question that there is no administrative procedure immediately available for testing its validity": 12 Buffalo L. Rev. at 329.

In this case, plaintiffs claim that the administrative system is arbitrary, invalid and unconstitutional. There is no channel in the Department of Licenses and Inspections in which this claim can be heard. There is no remedy which is adequate to protect the asserted claim or which might grant the same relief as a court. Petitioners cannot be required to exhaust nonexistent remedies. If there are no appropriate means of review within the administrative system, then the doctrine of exhaustion of administrative remedies has no applicability.

The only reason for requiring the owners here to go through the administrative system would be that the review board may reverse the initial determination that the buildings are unfit for human habitation, mooting the case. But this would subject plaintiffs to a system whose constitutionality they challenge and the combined effect of section 7-506 of the Housing Code with 35 PS § 1700-1 will continue to deprive them of rent moneys. It is this deprivation which they contend is in violation of the due process clause. Under these circumstances, plaintiffs cannot be required to exhaust the very remedies whose constitutionality they challenge.

### III. VAGUENESS.

(1) Specific Property.

Defendants object that plaintiffs have failed to refer to any specific property involved, but paragraph

10 of the amended complaint in equity states that the 94 properties listed in paragraph 2 were declared unfit for human habitation by the board.

(2) Portions of the Philadelphia Code.

Defendants also object because plaintiffs fail to specify which portions of the Philadelphia Code or the "point score" system are unlawful. Plaintiffs quite clearly state that the entire "point score" system is unlawful.

## IV. GOVERNMENTAL IMMUNITY.

Defendants contend that they are protected from suit by the concept of governmental immunity. A court of common pleas has jurisdiction to enjoin a governmental agency from exercising powers not conferred upon it or unconstitutionally conferred: Western Pennsylvania Hospital v. Lichliter, 340 Pa. 382 (1941). "Equity will intervene to restrain acts of municipal authorities which are contrary to positive law or amount to bad faith or constitute a violation of public duty": Downing v. Erie City School District, 360 Pa. 29, 33 (1948). Governmental immunity is no shield for the present defendants.

## V. CLASS ACTION.

Finally, defendants challenge plaintiffs' action as being a class action without complying with the requirements for bringing a class action. The problem here arises from the difference between a class action under Pa. R.C.P. 2230 and an action by an association under Pa. R.C.P. 2152. A class action is properly brought if the class is so large that it is impractical to join all parties and if one or more of the members of the class will adequately represent the interests of the whole class. Neither of these conditions is a requirement for an association action. An association is "an unincorporated association conducting any business or engaging in any activity of any nature

whether for profit or otherwise under a common name. . .": Rule 2151. An association action "shall be prosecuted in the name of a member or members thereof as trustees ad litem for such association": Rule 2152. The major difference between a class and an association is found in 3 Standard Pa. Practice, Goodrich-Amram, Procedural Rules Service, section 2152-2:

"An unincorporated association may properly be regarded as an entity for purpose of suit while a class cannot be so regarded. The association is comparatively permanent. While it does not have perpetual life based upon a charter and may cease to exist by the disbanding of its members, it has a relatively continuous existence and purpose without regard to any litigation. The class on whose behalf a true class suit is brought has only a transient existence. The common interest which creates the class arises when the cause of action arises and ends when the litigation is terminated."

There is no contention that the Philadelphia Council of Property Owners is not a relatively permanent organization. This is an association action and the proper procedures have been complied with. Accordingly, I overrule the preliminary objection.

I have a question (caveat) on this last ruling. Rule 2152 allows an association to bring an action, but, according to Goodrich-Amram, section 2152-1, "Rule 2152 only applies when the cause of action is owned by the association and the association is therefore the proper party to bring the action." This action is brought by various property owners concerning different properties. What the properties have in common is that all have been declared unfit for human habitation under section 7-506 of the Housing Code by use of the "point score" system. Other property owners are members of the association and their

complaint would be that they too may be subject to the "point score" system. The rights asserted here are constitutional rights not to be subject to the application of this system. This is not one right owned jointly by plaintiffs, but rather this is a situation in which several plaintiffs individually claim a right not to be subject to the operation of the "point score" system and have joined together to assert these rights in one action, since the rights asserted are identical. As such, this would seem more appropriately to be called "spurious" class action.

Having ruled, it may be too late for me to do anything, but perhaps it would have been appropriate to call this a class action and allow plaintiffs to amend under rule 1033.

Preliminary objections are overruled.